James A. Bryant II, SBN 255652
THE COCHRAN FIRM
4929 Wilshire Blvd. Suite 1010
Los Angeles, CA 90010
Telephone:     323-435-8205
Facsimile:     310-802-3829
Email:         jbryant@cochranfirm.com

*Counsel for Plaintiffs*

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br>WANDERLUXXE, LLC<br><br>                           Debtor.<br>_____<br><br>MICHAEL TYNES; HITZ INVESTMENT GROUP TRUST; AUGUST LEO INVESTMENTS, and IBIN LATEEF,<br><br>                     Plaintiffs,<br><br>vs.<br><br>WANDERLUXXE, LLC; MARTINIQUE "MARTI" HINES, and DOES 1-5,<br><br>                   Defendants. | Case No.: 2:20-bk-19483<br><br> Chapter 7<br><br>Adv. No.:<br><br>**COMPLAINT**<br><br>(Fraudulent Transfer, Piercing the Corporate Veil, Fraud) |

Plaintiffs MICHAEL TYNES; HITZ INVESTMENT GROUP TRUST, a Self-Directed IRA; AUGUST LEO INVESTMENTS, Self-Directed IRA, and IBIN LATEFF allege against Defendants WANDERLUXXE LLC and MARTINIQUE "MARTI" HINES, and each of them, as follows:

**JURISDICTION**

1.      This adversary proceeding arises in the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, entitled In re WanderLuxxe, LLC, Case No. 2:20-bk-19483-RK.

2.      This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(H) and (O) and § 1334.

3.      Alternatively, this is a proceeding related to a case under Title 11 pursuant to which this Court may submit findings of fact and conclusions of law to the district court according to 28 U.S.C. § 157(c)(1).

4.      This matter is asserted pursuant to Bankruptcy Code § 544, 548, and 550.

**VENUE**

5.      Venue is proper pursuant to 28 U.S.C. § 1409(a) as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this district.

**PARTIES AND GENERAL ALLEGATIONS**

6.      This bankruptcy case was commenced by Debtor's filing of a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code on October 20, 2020 (the "Petition Date").

7.      Plaintiff MICHAEL TYNES ("Tynes") is, and at all relevant times herein mentioned was a resident of the District of Columbia.

8.      Plaintiff HITZ INVESTMENT GROUP TRUST ("HIGT") is, and at all relevant times herein mentioned was a Self-directed IRA, established for the benefit of Tynes in the District of Columbia.

9.      Plaintiff AUGUST LEO INVESTMENTS ("ALI") is, and at all relevant times

herein mentioned was a Self-directed IRA, established for the benefit of Tynes in the District of Columbia.

10.     Plaintiff IBIN LATEFF ("Lateef") is, and at all relevant times herein mentioned was a resident of the State of Maryland.

11.     Upon information and belief, Defendant WANDERLUXXE LLC is, and at all relevant times herein mentioned was a California limited liability company ("WanderLuxxe"), with its principal place of business located in Los Angeles, California.

12.     Upon information and belief, Defendant MARTINIQUE "MARTI" HINES ("Hines") is, and at all relevant times herein mentioned was a resident of Los Angeles, California.

13.     Plaintiff is unaware of the names of Defendants identified herein as DOES 1-5, inclusive, and therefore sues them by those fictitious names. Plaintiff is informed and believes, and thereon alleges, that Defendants sued herein as DOES are responsible in some manner for the practices, acts, conduct, and occurrences alleged herein, as either actual perpetrators or coconspirators, aiders and abettors, officers, directors, and/or managing agents with the knowledge, control, authority, direction, and/or ratification of the other Defendants, and each of them. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of the DOE Defendants, and the roles they played, once their identities and/or manner of participation in the wrongful conduct herein described is ascertained

14.     At all relevant times, as alleged more fully herein, each Defendant acted as an agent, servant, employee, co-conspirator, alter-ego and/or joint venturer of the other Defendants, and in doing the things alleged herein acted within the course and scope of such

agency, employment, alter-ego and/or in furtherance of the joint venture. Each of the Defendant's acts alleged herein was done with the permission and consent of each of the other Defendants.

## GENERAL ALLEGATIONS

15.     Plaintiffs are informed and believe and thereon allege that WanderLuxxe is a company that offers event planting, hosting and promotional services in the Greater Southern California region.

16.     Plaintiffs are informed and believe and thereon allege that Defendant Hines is the majority owner and CEO of WanderLuxxe,

17.     Hines and Tynes have known each other for approximately 10 years. Between the period 2017 and 2018, Tynes made a series of smaller short term bridge loans to WanderLuxxe, through the solicitation of Hines, in which WanderLuxxe promptly repaid.

18.     In or around April/May 2019, following the previous loan transactions between WanderLuxxe and Tynes, Hines once again solicited Tynes for bridge loan in the amount of $24,000 at an interest rate of 20%, with a three (3) month maturity date. Unlike the prior loans, however, the term of the loan was increased from a 30-day maturity date, to a 90-day maturity date, maturing in or about July 2019.

19.     In or about June 2019, Hines once again approached Tynes for a new bridge loan in the amount of $41,000, in addition to the loan he had previously lent WanderLuxxe in the amount of $24,000. Hines represented to Tynes that she had secured a major contract to host an event, and needed to raise $300,000 for the Emmy's on September 22, 2019 (the "Emmy Event"). Defendant further represented that the event would return to her more than $700,000 in proceeds. Following her representations, Hines inquired if Tynes would be willing

to introduce her to some of his friends who may also have an interest in this investment.

20.    Accordingly, Defendant advised Tynes that if he were willing to roll his previous loan into a new loan totaling $65,000 for a term of 6 months, he would receive a rate of return of 40% on the loan. In reliance on the representations made by Hines, Tynes personally, and through HGIT, entered into two separate promissory notes with WanderLuxxe.

21.    In or around June 19, 2019, Tynes entered into a promissory note with WanderLuxxe for an amount of $30,000, of which $24,000 had previously been loaned, at an interest rate of 40%, with a maturity date of December 10, 2019 (the "June Tynes Note").

22.    Concurrently with the June 2019 Tynes Note, HIGT entered into a promissory note with WanderLuxxe for an amount of $35,000, also at an interest rate of 40%, and with a maturity date of December 10, 2019 (the "June HIGT Note"). True and correct copies of the June Tynes Note and June HIGT Note are attached hereto as Exhibit A.

23.    During this same period of time, Tynes, a law enforcement officer with the Washington D.C. metro police department ("DC Metro PD"), facilitated an introduction Lateef, a fellow law enforcement officer with DC Metro PD, as well as several other law enforcement officers, with Hines for this potential investment opportunity.

24.    During the discussions between Lateef and Hines, Hines made the same representations that she had acquired a contract to host an event for the 2019 Emmys, and that she was looking to raise $300,000 to plan, promote and host the event. Hines further represented to Lateef that the event would yield approximately $700,000 in revenue.

25.    On or about June 19, 2020, Lateef and WanderLuxxe entered into a promissory note for the amount of $40,000, with an interest rate of 25%, that was to mature on December 10, 2019 (the "Lateef Note"). A true and correct copy of the Lateef Note is

5

attached hereto as <u>Exhibit B</u>.

26.     Following the execution of the promissory notes issued by Tynes and Lateef, plaintiffs completed their obligations by wiring the funds to a Chase Bank Account ending in 9196. It would later be determined that the money was wired to a personal account owned by Hines, not a WanderLuxxe business account.

27.     By the end of June 2019, Hines once again solicited additional funding from Tynes, on the basis that she was still attempting to complete the raise for the Emmy Event. On that basis, on or about July 1, 2019, Tynes, through ALI, entered into an additional promissory note for an amount of $35,000, at an interest rate of 40%, with a maturity date of December 10, 2019 (the "July ALI Note"). A true and correct copy of the ALI Note is attached hereto as <u>Exhibit C</u>.

28.     By the end of July 2019, Defendants had procured $40,000 from Lateef and $100,000 from Tynes, as well as tens of thousands of dollars from other friends of Tynes whom he introduced to Hines.

29.     In or around September of 2019, Hines reached out to Tynes about another possible event investment for several other events WanderLuxxe had secured for 2020. Hines represented to Tynes that in addition to the Emmy Event set to take place on September 22, 2019, she and WanderLuxxe were also raising funds for events during the Golden Globes and the Sundance Film Festival, taking place in January of 2020 and, further, that she was again was looking to raise $100,000.

30.     Defendant represented to Tynes that monies lent for this transaction would be paid 20% on the loan. In reliance on Hines representations, Tynes agreed to invest an additional $50,000 in a series of notes.

31.      On September 22, 2019, Tynes, through ALI, entered into a promissory note for an amount of $43,500, at an interest rate of 20%, and a maturity date of January 15, 2020 (the "September ALI Note").

32.      Concurrently, Tynes, through HIGT, entered into a promissory note for an amount of $7,500, at an interest rate of 20%, and a maturity date of January 15, 2020 (the "September HIGT Note" and collectively with the Lateef Note, June Tynes Note, June ALI Note, June HIGT Note and September ALI Note the "Notes"). Thus, by September 22, 2019, Tynes had loaned to Defendants a total of $150,000. True and correct copies of the September ALI Note and September HIGT Note are attached hereto as Exhibit D.

33.      Shortly after Emmy Event, Plaintiffs Tynes and Lateef began inquiring to Hines whether or not the event was successful. Hines repeatedly represented to Plaintiffs that the Emmy Event went extremely well, that Defendants had achieved their revenue marks, and that after Defendants had completed processing invoices, Plaintiffs would be repaid on the maturity dates set forth in the Notes.

34.      On or about December 10, 2019, WanderLuxxe failed to repay the monies owed to Plaintiffs. Not having received repayment, Plaintiffs immediately contacted Hines to determine the status of repayment. Initially, in response, Hines repeatedly assured Plaintiffs that Defendants would be repaying the Notes, but she needed a little more time to do so, as she was still reconciling her books.

35.      By January 15, 2020, Defendants failed to repay the September ALI Note and September HIGT Note, and the previous Notes that were to be repaid on December 10, 2019 still remained outstanding.

36.      Shortly thereafter, Plaintiffs each contacted Hines to demand payment on the

outstanding monies owed on the Notes. In response Hines informed Plaintiffs that Defendants would not be repaying the loans, as WanderLuxxe had become insolvent, despite representing to Plaintiffs that the events were very successful and that they would be paid back once Defendants reconciled their books.

37.     After several more unsuccessful attempts to receive answers from Defendants, Plaintiffs reached out to Lola Wood ("Wood"), a co-manager and member of WanderLuxxe. During their discussions with Wood, Plaintiffs informed Wood that Hines had represented to them that WanderLuxxe had been awarded a contract for the Emmy Event, and that the company needed to raise $300,000 to put the event on, with the expectation that the event would generate $700,000 in revenues. Tynes further informed Wood, that Hines represented that in addition to the funds raised for the Emmy Event, Defendants needed an additional $100,000 to host Sundance and Golden Globes events. On the basis of the representations made by Hines to Plaintiffs, Plaintiffs had collectively loaned to Defendants $200,000, which had become due and payable, but remained unresolved.

38.     In response, Wood informed Plaintiffs that those representations were absolutely false, in that the Emmy Event was only ever anticipated to cost approximately $25,000 to host and promote, that WanderLuxxe would never have made anything close to $700,000 in revenues, and that the Sundance event was never intended to cost anything near $100,000, and that WanderLuxxe was not hosting an event for the 2020 Golden Globe Awards. Wood further informed Plaintiffs that if in fact Plaintiffs did lend those monies to Defendants, that a minimal amount if any at all was used for the Emmy and Sundance events.

39.     In addition to disclosing to Plaintiffs that the representations made by Hines were in fact false, Wood also informed Plaintiffs that more recently, Hines had begun to use

the Company as her own personal piggy bank by co-mingling business and her personal affairs. As a result of what Wood had perceived to be misappropriation of the company's funds, and Hines treating WanderLuxxe as if they were one in the same, Wood had taken a step back from involving herself with the company.

40.      Upon discovering this information, Plaintiffs were shocked to learn that not only had Hines falsely represented the purpose and use of the funds procured through the Notes, they were even more alarmed at the fact that it was unclear where the monies went, and how they would retrieve these funds.

41.      Following the discovery of the fraud that had been perpetrated against them, they discovered that Hines was owner to several other business entities. Furthermore, Plaintiffs discovered that WanderLuxxe had numerous creditors, including, Plaintiffs.

42.      Upon information and belief, the only assets owned by Defendant WanderLuxxe by September 2019, were the loan proceeds issued to Defendants by Plaintiffs, and the other parties whom Tynes introduced Hines to.

43.      Upon information and belief, Defendant Hines used a portion of the loan proceeds that were supposed to be used for the award show events, for her own personal benefit and expenses, while using little if any of those funds for the alleged events themselves.

44.      Upon information and belief, in order to avoid repayment of the monies owed to Plaintiffs, including the portion of the funds that were not used for the alleged events, Defendant Hines transferred those monies to other businesses and personal accounts owned by Hines.

45.      Upon information and belief, Defendants transferred all of the loan proceeds from the Notes to accounts either owned by Hines or to business entities owned by Hines.

## COUNT I

### Fraudulent Transfer Under Bankruptcy Code §§ 544, 548, and 550;

### Cal. Civ. Code § 3439 et seq.

46.    Plaintiffs hereby re-allege and incorporate paragraphs 1 through 44 as if fully set out herein.

47.    WanderLuxxe, within two (2) years of the Petition Date, transferred the loan proceeds from the Notes to Hines and other entities owned by Hines.

48.    WanderLuxxe transferred the loan proceeds to Hines and entities owned by Hines with the actual intent to hinder, delay or defraud its creditors.

49.    Neither Hines nor the entities owned by Hines that received the loan proceeds from the Notes were not entitled to receive any of those proceeds, and did not render services equivalent to the monies that they received.

50.    WanderLuxxe was insolvent at the time in which it transferred the loan proceeds to Hines and entities owned by Hines.

51.    Plaintiffs are entitled to avoid the transfer of the loan proceeds of the Notes under applicable non-bankruptcy law as incorporated into Bankruptcy Code § 544.

52.    Plaintiffs are entitled to avoid the transfer of the loan proceeds of the Notes under Bankruptcy Code § 548.

53.    Plaintiffs are entitled to recover the transfer of the loan proceeds of the Notes or their value under Bankruptcy Code § 550(a)(1) from the Hines and the entities owned by Hines as the initial transferee of the loan proceeds.

54.    Plaintiffs are entitled to recover the transfer of the loan proceeds of the Notes

or their value under Bankruptcy Code § 550(a)(1) from the Hines and the entities owned by

Hines as an immediate or mediate transferee because Hines and the entities owned by Hines

did not receive the transfer of the loan proceeds from the Notes for value, in good faith, or

without knowledge that the transfers are avoidable.

## COUNT II

### Declaratory Relief to Pierce the Corporate Veil

55.    Plaintiffs hereby re-allege and incorporate paragraphs 1 through 44 as if fully

set out herein.

56.    For all times relevant to this Complaint, WanderLuxxe was influenced, owned

and managed by Hines.

57.    Upon information and belief, WanderLuxxe had no separate capitalization

aside from capital provided by Hines.

58.    At all times relevant, Hines was the managing member of WanderLuxxe.

59.    At all times relevant, Hines and WanderLuxxe shared a unity of interest such

that one was inseparable from the other.

60.    Upon information and belief, specifically, at all times relevant hereto,

Defendant Hines (1) controlled the business and affairs of WanderLuxxe, including any and

all of its affiliates; (2) commingled the funds and assets of the company, and diverted corporate

funds and assets for her own personal use; (3) disregarded legal formalities and failed to

maintain arm's length relationships with the company; (4) inadequately capitalized

WanderLuxxe; (5) held herself out as personally liable for the debts of the corporate entities;

(6) used the company as a mere shell, instrumentality or conduit for herself and/or her

individual businesses; (8) used the company to procure labor, services or merchandise for

another person or entities; (9) manipulated the assets and liabilities between the company and herself so as to concentrate the assets in one and the liabilities in another; (10) used the company to conceal its ownership, management and financial interests and/or personal business activities; and/or (11) used the company to shield against personal obligations, and in particular the obligations as alleged in this Complaint.

61.      At all times relevant thereto, Defendant WanderLuxxe was not only influenced and governed by Defendant Hines, but there was such a unity of interest and ownership that the individuality, or separateness, of Brown and WanderLuxxe has ceased, and that the facts are such that an adherence to the fiction of the separate existence of these entities would, under the particular circumstances, sanction a fraud or promote injustice.

## **COUNT III**

### Fraud

62.      Beginning in or about June 2019 and continuing through December 2019, Defendants represented to Plaintiffs that their business was involved in certain entertainment related opportunities, that certain monies were needed to host events, that if Plaintiffs lent monies to Defendants they would be repaid and, further, receive a return on their investment of between 20% and 40% (hereafter "Defendants' Misrepresentations"), all as alleged herein above.

63.      Defendants' Misrepresentations were in fact false. The true facts were that the costs of the events were not as represented, that the monies lent by Plaintiffs to Defendants were not going to be used to put on the events but rather to pay the personal expenses of Hines, and to be transferred to other entities owned by Hines.

64.      When Defendants made the Defendants' Misrepresentations, Defendants

knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on these representations in the manner herein alleged, or with the expectation that Plaintiff would so act Plaintiffs would not be paid when represented, and that Plaintiffs would not be paid at all, all as alleged herein above.

65.     At the time Defendants made the Defendants' Misrepresentations and at the time Plaintiffs took the actions herein alleged, Plaintiffs were ignorant of the falsity of Defendants' misrepresentations and believed them to be true. In reliance on these representations, Plaintiffs were induced to and did continue to lend monies to Defendants, all as alleged herein above.

66.     Had Plaintiffs known the actual facts, Plaintiff would not have entered into the Notes with Defendant WanderLuxxe. Plaintiffs' reliance on Defendants representations was justified, given Tynes 10-year relationship with Hines. Plaintiffs had no grounds to believe that Defendants would distort the truth and conceal the true facts concerning the purpose and use of the loans, or when or whether Plaintiffs would be repaid.

67.     As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs were induced to enter into the Notes, which monies have not been repaid and which rate of return was not made, by reason of which Plaintiffs have been damaged in excess of $50,000, according to proof.

68.     As a further proximate result of the intentional misrepresentation of Defendants, and each of them. Plaintiffs have sustained incidental and consequential damages, including without limitation the right to recover reasonable attorneys' fees and other costs incurred in addition to any other relief to which it may be entitled as costs of suit

and not as damages, pursuant to the terms of the Notes, in an amount presently unascertained but to be proven at trial.

69.     The aforementioned conduct of Defendants was intentional misrepresentation, deceit, or concealment of material facts known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the Plaintiffs to a cruel and unjust hardship in conscious disregard of the Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, subject to Plaintiffs right to subsequently elect their remedies, Plaintiffs request the following relief:

A.     For avoidance of the loan proceeds transfer pursuant to Bankruptcy Code §§ 544 and 548 and/or Cal. Civ. Code §3439, et seq.

B.     For recovery of the loan proceeds transfer or its value pursuant to Bankruptcy Code §§ 550 and/or Cal. Civ. Code §3439, et seq.

C.     For declaratory relief to pierce the corporate veil and determine that Hines and WanderLuxxe were alter egos of each other and operated as a single business enterprise.

D.     For compensatory damages against Defendants for fraud.

E.     For punitive damages against Defendants.

F.     Pre- and post-judgment interest;

G.     For an award of attorney's fees and costs against Defendants in favor of Plaintiffs.

A.   For such other and further relief as is just and equitable.


Dated: January 22, 2021              /s/ James Bryant
                                      James A. Bryant
                                      Attorney for Plaintiffs

**EXHIBIT A**

# PROMISSORY NOTE

$42,000.00

June 19, 2019

FOR VALUE RECEIVED, WanderLuxxe LLC, a California limited liability company, with an address at 1209 S Crescent Heights Los Angeles, CA 90035 att: Marti Hines  (the "Borrower") hereby promises to pay to the order of _Michael Tynes_____(the "Lender"), at the Lender's address at 3108 M Place SE Washington, DC 20019, (or such other place as the Lender may designate in writing to the Borrower), the aggregate principal sum of Thirty Thousand Dollars ($30,000) (the "Loan Amount") Twenty Four Thousand Dollars ($24,000) previously paid to Borrower with Six Thousand Dollars ($6,000) remaining towards principal sum, with interest, in lawful money of the United States, upon the terms and subject to the conditions set forth herein.

1.    INTEREST RATE.  Interest on the unpaid Loan Amount and the Loan Fee under this Promissory Note (the "Note") shall accrue at a rate of forty (40%) percent per annum commencing on December 10, 2019.  Interest shall be calculated on the basis of actual number of days elapsed over a year of 360 days and all accrued and unpaid interest shall be compounded annually and added to the outstanding principal balance hereof.

2.    PAYMENTS.  The Borrower shall make payment in full of the Loan Amount and the Loan Fee, Forty Two Thousand ($42,000.00) Dollars, on or before December 10, 2019.  If Borrower fails to do so, Borrower shall make monthly payments of at least the interest until such time as the full amount as all principal, fees and interest due hereunder (the "Obligations") have been paid in full. All payments made under this Note shall be applied first to payment of accrued but unpaid interest and the remainder of such payments shall be applied to reduce the outstanding principal balance of the Note.  The Obligations may be repaid at any time and from time to time. The account to be transferred into is a Chase account with the following information:

ACCT #: 809379196
ROUTING #: 322271627

3.    MANNER OF PAYMENT. Payment shall be made in cash by wire transfer of immediately available funds to an account designated in writing by the Lender to the Borrower and/or by check. If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of Maryland), such required payment shall be due and payable on the immediately succeeding business day.

4.    DEFAULT. If any of the following occur, a default ("Default") under this Note shall exist:

(a)    The failure of timely payment or performance of the Obligations under this Note.

20121956v.1

(b)  Borrower shall make an assignment for the benefit of its creditors or admit in writing its inability to pay its debts generally as they become due.

(c)  Borrower shall be adjudicated a bankrupt, or a custodian, trustee or receiver shall be appointed for its or of all or a substantial part of its property, and such adjudication or appointment shall not be discharged, vacated or stayed on appeal within sixty (60) days; or any court shall take jurisdiction of all or a substantial part of the property of Borrower in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Borrower, and such proceeding shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within sixty (60) days; or Borrower shall file a petition, or an answer consenting to or acquiescing in a petition against it in bankruptcy or under the Federal Bankruptcy Code or any similar law, state or federal, whether now or hereafter existing or any such petition filed against Borrower shall be approved or not vacated or stayed within thirty (30) days.

5.  REMEDIES UPON DEFAULT. If a Default occurs, upon notice from the Lender, this Note and all Obligations hereunder may be declared immediately due and payable, and Lender may exercise any rights and remedies as provided under this Note, or as provided by law or equity.

6.  ATTORNEY'S FEES AND OTHER COLLECTION COSTS. Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

7.  AMENDMENT. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.

8.  WAIVERS. The Borrower hereby waives to the extent not prohibited by applicable law (i) all presentments, demands for performance or notices of nonperformance; (ii) any requirement of diligence or promptness on the part of the Lender to enforce its rights under this Note; (iii) any and all notices of every kind and description which may be required to be given by any law; and (iv) any defense of any kind (other than payment) which it may now or hereafter have with respect to its obligations under this Note. No failure, delay or course of dealing on the part of the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the simultaneous or later exercise of any other right, power or privilege hereunder.

9.  RIGHTS AND REMEDIES. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender may otherwise have.

10.  GOVERNING LAW/VENUE. This Note shall be governed by and construed in accordance with the laws of the District of Columbia without regard to the principles or policies of conflicts of laws of such state. The Borrower and Lender hereby agree that all actions with

-2-

20121956v.1

(b)    Borrower shall make an assignment for the benefit of its creditors or admit in writing its inability to pay its debts generally as they become due.

(c)    Borrower shall be adjudicated a bankrupt, or a custodian, trustee or receiver shall be appointed for its or of all or a substantial part of its property, and such adjudication or appointment shall not be discharged, vacated or stayed on appeal within sixty (60) days; or any court shall take jurisdiction of all or a substantial part of the property of Borrower in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Borrower, and such proceeding shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within sixty (60) days; or Borrower shall file a petition, or an answer consenting to or acquiescing in a petition against it in bankruptcy or under the Federal Bankruptcy Code or any similar law, state or federal, whether now or hereafter existing or any such petition filed against Borrower shall be approved or not vacated or stayed within thirty (30) days.

5.    REMEDIES UPON DEFAULT. If a Default occurs, upon notice from the Lender, this Note and all Obligations hereunder may be declared immediately due and payable, and Lender may exercise any rights and remedies as provided under this Note, or as provided by law or equity.

6.    ATTORNEY'S FEES AND OTHER COLLECTION COSTS. Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

7.    AMENDMENT. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.

8.    WAIVERS. The Borrower hereby waives to the extent not prohibited by applicable law (i) all presentments, demands for performance or notices of nonperformance; (ii) any requirement of diligence or promptness on the part of the Lender to enforce its rights under this Note; (iii) any and all notices of every kind and description which may be required to be given by any law; and (iv) any defense of any kind (other than payment) which it may now or hereafter have with respect to its obligations under this Note.  No failure, delay or course of dealing on the part of the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the simultaneous or later exercise of any other right, power or privilege hereunder.

9.    RIGHTS AND REMEDIES. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender may otherwise have.

10.    GOVERNING LAW/VENUE. This Note shall be governed by and construed in accordance with the laws of the District of Columbia without regard to the principles or policies of conflicts of laws of such state.  The Borrower and Lender hereby agree that all actions with

-2-

respect to this Note shall be brought exclusively in the state and federal courts having jurisdiction over the city and county of Washington DC

11.    WAIVER OF JURY.  THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

12.    SEVERABILITY.  The parties hereto intend that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender or the holder hereof under the remainder of this Note shall continue in full force and effect.

13.    NOTICES. Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to Borrower's address shown above or such other address as provided hereunder, and to Lender, if in writing and mailed or delivered to the address set forth above or such other address as Lender may specify in writing from time to time. In the event that Borrower changes Borrower's address at any time prior to the date the obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by nationally recognized overnight courier or by registered or certified mail, return receipt requested, all charges prepaid.

14.    CAPTIONS. The captions contained in the Note are inserted for convenience only and shall not affect the meaning or interpretation of the Note.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has caused this Note to be executed on the date first above written.

Wander Luxxe                                              Lender

By: _____                          By: _____

Name:                                                       Name: Michael Tynes
Title:    Marti Hines                                 Title: Lender

          CEO

# PROMISSORY NOTE

$49,000.00                                                                June 19, 2019

FOR VALUE RECEIVED, WanderLuxxe LLC, a California limited liability company, with an address at 1209 S Crescent Heights Los Angeles, CA 90035 att: Marti Hines  (the "Borrower") hereby promises to pay to the order of _Hitz Investment Group Trust_____(the "Lender"), at the Lender's address at 3108 M Place SE Washington, DC 20019, (or such other place as the Lender may designate in writing to the Borrower), the aggregate principal sum of Thirty Five Thousand Dollars ($35,000) (the "Loan Amount"), with interest, in lawful money of the United States, upon the terms and subject to the conditions set forth herein.

1.      INTEREST RATE.  Interest on the unpaid Loan Amount and the Loan Fee under this Promissory Note (the "Note") shall accrue at a rate of forty (40%) percent per annum commencing on December 10, 2019.  Interest shall be calculated on the basis of actual number of days elapsed over a year of 360 days and all accrued and unpaid interest shall be compounded annually and added to the outstanding principal balance hereof.

2.      PAYMENTS.  The Borrower shall make payment in full of the Loan Amount and the Loan Fee, Forty Nine Thousand ($49,000.00) Dollars, on or before December 10, 2019.  If Borrower fails to do so, Borrower shall make monthly payments of at least the interest until such time as the full amount as all principal, fees and interest due hereunder (the "Obligations") have been paid in full. All payments made under this Note shall be applied first to payment of accrued but unpaid interest and the remainder of such payments shall be applied to reduce the outstanding principal balance of the Note.  The Obligations may be repaid at any time and from time to time. The account to be transferred into is a Chase account with the following information:

ACCT #: 809379196
ROUTING #: 322271627

3.      MANNER OF PAYMENT. Payment shall be made in cash by wire transfer of immediately available funds to an account designated in writing by the Lender to the Borrower and/or by check. If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of Maryland), such required payment shall be due and payable on the immediately succeeding business day.

4.      DEFAULT. If any of the following occur, a default ("Default") under this Note shall exist:

        (a)     The failure of timely payment or performance of the Obligations under this Note.

20121956v.1

Case 2:21-ap-01018-RK    Doc 1    Filed 01/25/21    Entered 01/25/21 15:55:08    Desc
Main Document      Page 21 of 38

(b)     Borrower shall make an assignment for the benefit of its creditors or admit in writing its inability to pay its debts generally as they become due.

(c)     Borrower shall be adjudicated a bankrupt, or a custodian, trustee or receiver shall be appointed for its or of all or a substantial part of its property, and such adjudication or appointment shall not be discharged, vacated or stayed on appeal within sixty (60) days; or any court shall take jurisdiction of all or a substantial part of the property of Borrower in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Borrower, and such proceeding shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within sixty (60) days; or Borrower shall file a petition, or an answer consenting to or acquiescing in a petition against it in bankruptcy or under the Federal Bankruptcy Code or any similar law, state or federal, whether now or hereafter existing or any such petition filed against Borrower shall be approved or not vacated or stayed within thirty (30) days.

5.     REMEDIES UPON DEFAULT. If a Default occurs, upon notice from the Lender, this Note and all Obligations hereunder may be declared immediately due and payable, and Lender may exercise any rights and remedies as provided under this Note, or as provided by law or equity.

6.     ATTORNEY'S FEES AND OTHER COLLECTION COSTS. Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

7.     AMENDMENT. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.

8.     WAIVERS. The Borrower hereby waives to the extent not prohibited by applicable law (i) all presentments, demands for performance or notices of nonperformance; (ii) any requirement of diligence or promptness on the part of the Lender to enforce its rights under this Note; (iii) any and all notices of every kind and description which may be required to be given by any law; and (iv) any defense of any kind (other than payment) which it may now or hereafter have with respect to its obligations under this Note. No failure, delay or course of dealing on the part of the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the simultaneous or later exercise of any other right, power or privilege hereunder.

9.     RIGHTS AND REMEDIES. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender may otherwise have.

10.     GOVERNING LAW/VENUE. This Note shall be governed by and construed in accordance with the laws of the District of Columbia without regard to the principles or policies of conflicts of laws of such state. The Borrower and Lender hereby agree that all actions with

-2-

respect to this Note shall be brought exclusively in the state and federal courts having jurisdiction over the city and county of Washington DC

11.    WAIVER OF JURY.  THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

12.    SEVERABILITY.  The parties hereto intend that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender or the holder hereof under the remainder of this Note shall continue in full force and effect.

13.    NOTICES. Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to Borrower's address shown above or such other address as provided hereunder, and to Lender, if in writing and mailed or delivered to the address set forth above or such other address as Lender may specify in writing from time to time. In the event that Borrower changes Borrower's address at any time prior to the date the obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by nationally recognized overnight courier or by registered or certified mail, return receipt requested, all charges prepaid.

14.    CAPTIONS. The captions contained in the Note are inserted for convenience only and shall not affect the meaning or interpretation of the Note.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has caused this Note to be executed on the date first above written.

WanderLuxxe

By: _____

Name: Marti Hines

Title:

        CEO

Lender

By: _____

Name:  Hitz / Investment

Title:     Group Trust

        Michael Tynes, owner

20121956v.1

**EXHIBIT B**

# PROMISSORY NOTE

$50,000                                                                            June 19, 2019

FOR VALUE RECEIVED, WanderLuxxe LLC, a California limited liability company, with an address at 1209 S Crescent Heights Los Angeles, CA 90035 att: Marti Hines  (the "Borrower") hereby promises to pay to the order of _Ibin Lateef_____(the "Lender"), at the Lender's address at 2375 Sequola Grove Street Waldorf, MD 20601, (or such other place as the Lender may designate in writing to the Borrower), the aggregate principal sum of Forty Thousand Dollars ($40,000) (the "Loan Amount"), with interest, in lawful money of the United States, upon the terms and subject to the conditions set forth herein.

1.    INTEREST RATE. Interest on the unpaid Loan Amount and the Loan Fee under this Promissory Note (the "Note") shall accrue at a rate of twenty-five (25%) percent per annum commencing on December 10, 2019. Interest shall be calculated on the basis of actual number of days elapsed over a year of 360 days and all accrued and unpaid interest shall be compounded annually and added to the outstanding principal balance hereof.

2.    'PAYMENTS. The Borrower shall make payment in full of the Loan Amount and the Loan Fee, Fifty Thousand ($50,000.00) Dollars, on or before December 10, 2019. If Borrower fails to do so, Borrower shall make monthly payments of at least the interest until such time as the full amount as all principal, fees and interest due hereunder (the "Obligations") have been paid in full. All payments made under this Note shall be applied first to payment of accrued but unpaid interest and the remainder of such payments shall be applied to reduce the outstanding principal balance of the Note. The Obligations may be repaid at any time and from time to time. The account to be transferred into is a Chase account with the following information:

ACCT #: 809379196
ROUTING #: 322271627

3.    MANNER OF PAYMENT. Payment shall be made in cash by wire transfer of immediately available funds to an account designated in writing by the Lender to the Borrower and/or by check. If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of Maryland), such required payment shall be due and payable on the immediately succeeding business day.

4.    DEFAULT. If any of the following occur, a default ("Default") under this Note shall exist:

        (a)    The failure of timely payment or performance of the Obligations under this Note.

    (b)    Borrower shall make an assignment for the benefit of its creditors or admit in writing its inability to pay its debts generally as they become due.

    (c)    Borrower shall be adjudicated a bankrupt, or a custodian, trustee or receiver shall be appointed for its or of all or a substantial part of its property, and such adjudication or appointment shall not be discharged, vacated or stayed on appeal within sixty (60) days; or any court shall take jurisdiction of all or a substantial part of the property of Borrower in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Borrower, and such proceeding shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within sixty (60) days; or Borrower shall file a petition, or an answer consenting to or acquiescing in a petition against it in bankruptcy or under the Federal Bankruptcy Code or any similar law, state or federal, whether now or hereafter existing or any such petition filed against Borrower shall be approved or not vacated or stayed within thirty (30) days.

5.    REMEDIES UPON DEFAULT. If a Default occurs, upon notice from the Lender, this Note and all Obligations hereunder may be declared immediately due and payable, and Lender may exercise any rights and remedies as provided under this Note, or as provided by law or equity.

6.    ATTORNEY'S FEES AND OTHER COLLECTION COSTS. Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

7.    AMENDMENT. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.

8.    WAIVERS. The Borrower hereby waives to the extent not prohibited by applicable law (i) all presentments, demands for performance or notices of nonperformance; (ii) any requirement of diligence or promptness on the part of the Lender to enforce its rights under this Note; (iii) any and all notices of every kind and description which may be required to be given by any law; and (iv) any defense of any kind (other than payment) which it may now or hereafter have with respect to its obligations under this Note. No failure, delay or course of dealing on the part of the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the simultaneous or later exercise of any other right, power or privilege hereunder.

9.    RIGHTS AND REMEDIES. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender may otherwise have.

10.    GOVERNING LAW/VENUE. This Note shall be governed by and construed in accordance with the laws of the State of Maryland, without regard to the principles or policies of conflicts of laws of such state. The Borrower and Lender hereby agree that all actions with respect

to this Note shall be brought exclusively in the state and federal courts having jurisdiction over the city and county of Waldorf,MD.

11.    WAIVER OF JURY. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

12.  .  SEVERABILITY.  The parties hereto intend that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender or the holder hereof under the remainder of this Note shall continue in full force and effect.

13.    NOTICES. Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to Borrower's address shown above or such other address as provided hereunder, and to Lender, if in writing and mailed or delivered to the address set forth above or such other address as Lender may specify in writing from time to time. In the event that Borrower changes Borrower's address at any time prior to the date the obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by nationally recognized overnight courier or by registered or certified mail, return receipt requested, all charges prepaid.

14.    CAPTIONS. The captions contained in the Note are inserted for convenience only and shall not affect the meaning or interpretation of the Note.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has caused this Note to be executed on the date first above written.

WanderLuxxe                                    Lender

By:                                            By:

Name:  Martinique Hines    June 27, 2019      Name:  Ibin Lateef


**NAVY FEDERAL
Credit Union**

June 27, 2019                                    01:50:51 PM EDT


IBIN S LATEEF
2375 SEQUOIA GROVE ST
WALDORF MD 20601

**Bank Wire Transfer Receipt**

| | |
|---|---|
| Payee: | MARTINIQUE HINES |
| Payee Bank: | JPMORGAN CHASE BANK, NA |
| Confirmation Number: | OPF399940029 |

| | |
|---|---|
| Amount Sent: | $25,000.00 |
| Transfer Fees: | $14.00 |
| Total: | $25,014.00 |

Based on the information provided, we initiated the above transaction on your behalf. If you think an error
has occurred, please contact us immediately at 1-888-842-6328. Visit **navyfederal.org** for a complete list of
international toll-free numbers or to send us a secure message.

**Federally insured by NCUA.**
©2017 Navy Federal NFCU 677CL(6-17)

**EXHIBIT C**

# PROMISSORY NOTE

$49,000.00

July 1, 2019

FOR VALUE RECEIVED, WanderLuxxe LLC, a California limited liability company, with an address at 1209 S Crescent Heights Los Angeles, CA 90035 att: Marti Hines (the "Borrower") hereby promises to pay to the order of _August Leo Investments_____(the "Lender"), at the Lender's address at 3108 M Place SE Washington, DC 20019, (or such other place as the Lender may designate in writing to the Borrower), the aggregate principal sum of Thirty Five Thousand Dollars ($35,000) (the "Loan Amount"), with interest, in lawful money of the United States, upon the terms and subject to the conditions set forth herein.

1.      INTEREST RATE. Interest on the unpaid Loan Amount and the Loan Fee under this Promissory Note (the "Note") shall accrue at a rate of forty (40%) percent per annum commencing on December 10, 2019. Interest shall be calculated on the basis of actual number of days elapsed over a year of 360 days and all accrued and unpaid interest shall be compounded annually and added to the outstanding principal balance hereof.

2.      PAYMENTS. The Borrower shall make payment in full of the Loan Amount and the Loan Fee, Forty Nine Thousand ($49,000.00) Dollars, on or before December 10, 2019. If Borrower fails to do so, Borrower shall make monthly payments of at least the interest until such time as the full amount as all principal, fees and interest due hereunder (the "Obligations") have been paid in full. All payments made under this Note shall be applied first to payment of accrued but unpaid interest and the remainder of such payments shall be applied to reduce the outstanding principal balance of the Note. The Obligations may be repaid at any time and from time to time. The account to be transferred into is a Chase account with the following information:

ACCT #: 809379196
ROUTING #: 322271627
Martinique Hines
625 N Flores St 201
Los Angeles, CA 90048

3.      MANNER OF PAYMENT. Payment shall be made in cash by wire transfer of immediately available funds to an account designated in writing by the Lender to the Borrower and/or by check. If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of Maryland), such required payment shall be due and payable on the immediately succeeding business day.

4.      DEFAULT. If any of the following occur, a default ("Default") under this Note shall exist:

20121956v.1

(a)     The failure of timely payment or performance of the Obligations under this Note.

(b)     Borrower  shall make an assignment for the benefit of its creditors or admit in writing its inability to pay its debts generally as they become due.

(c)     Borrower shall be adjudicated a bankrupt, or a custodian, trustee or receiver shall be appointed for its or of all or a substantial part of its property, and such adjudication or appointment shall not be discharged, vacated or stayed on appeal within sixty (60) days; or any court shall take jurisdiction of all or a substantial part of the property of Borrower in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Borrower, and such proceeding shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within sixty (60) days; or Borrower shall file a petition, or an answer consenting to or acquiescing in a petition against it in bankruptcy or under the Federal Bankruptcy Code or any similar law, state or federal, whether now or hereafter existing or any such petition filed against Borrower shall be approved or not vacated or stayed within thirty (30) days.

5.     REMEDIES UPON DEFAULT. If a Default occurs, upon notice from the Lender, this Note and all Obligations hereunder may be declared immediately due and payable, and Lender may exercise any rights and remedies as provided under this Note, or as provided by law or equity.

6.     ATTORNEY'S FEES AND OTHER COLLECTION COSTS. Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

7.     AMENDMENT.  This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.

8.     WAIVERS. The Borrower hereby waives to the extent not prohibited by applicable law (i) all presentments, demands for performance or notices of nonperformance; (ii) any requirement of diligence or promptness on the part of the Lender to enforce its rights under this Note; (iii) any and all notices of every kind and description which may be required to be given by any law; and (iv) any defense of any kind (other than payment) which it may now or hereafter have with respect to its obligations under this Note.  No failure, delay or course of dealing on the part of the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the simultaneous or later exercise of any other right, power or privilege hereunder.

9.     RIGHTS AND REMEDIES. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender may otherwise have.

20121956v.1

10.    GOVERNING LAW/VENUE. This Note shall be governed by and construed in accordance with the laws of the District of Columbia without regard to the principles or policies of conflicts of laws of such state.  The Borrower and Lender hereby agree that all actions with respect to this Note shall be brought exclusively in the state and federal courts having jurisdiction over the city and county of  Washington DC

11.    WAIVER OF JURY. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

12.    SEVERABILITY.  The parties hereto intend that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender or the holder hereof under the remainder of this Note shall continue in full force and effect.

13.    NOTICES. Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to Borrower's address shown above or such other address as provided hereunder, and to Lender, if in writing and mailed or delivered to the address set forth above or such other address as Lender may specify in writing from time to time. In the event that Borrower changes Borrower's address at any time prior to the date the obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by nationally recognized overnight courier or by registered or certified mail, return receipt requested, all charges prepaid.

14.    CAPTIONS. The captions contained in the Note are inserted for convenience only and shall not affect the meaning or interpretation of the Note.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has caused this Note to be executed on the date first above written.

Wander Luxxe

By: _____
Name:  Marti Hines
Title:   CEO

Lender

By: _____
Name: _____
Title:  August Leo Investment
        Owner

-3-

20121956v.1

**EXHIBIT D**

## PROMISSORY NOTE

$52,2000                                                          September 22, 2019

     FOR VALUE RECEIVED, WanderLuxxe LLC, a California limited liability company, with an address at 1209 S Crescent Heights Los Angeles, CA 90035 att: Marti Hines  (the "Borrower") hereby promises to pay to the order of _August Leo Investments_(the "Lender"), at the Lender's address at 3108 M Place SE Washington, DC 20019, (or such other place as the Lender may designate in writing to the Borrower), the aggregate principal sum of Forty Three Thousand Five Hundred Dollars ($43,500) (the "Loan Amount") with interest, in lawful money of the United States, upon the terms and subject to the conditions set forth herein.

     1.    INTEREST RATE.  Interest on the unpaid Loan Amount and the Loan Fee under this Promissory Note (the "Note") shall accrue at a rate of forty (20%) percent per annum commencing on January 15, 2020.  Interest shall be calculated on the basis of actual number of days elapsed over a year of 360 days and all accrued and unpaid interest shall be compounded annually and added to the outstanding principal balance hereof.

     2.    PAYMENTS.  The Borrower shall make payment in full of the Loan Amount and the Loan Fee, Forty Two Thousand ($52,200.00) Dollars, on or before January 15, 2020.  If Borrower fails to do so, Borrower shall make monthly payments of at least the interest until such time as the full amount as all principal, fees and interest due hereunder (the "Obligations") have been paid in full. All payments made under this Note shall be applied first to payment of accrued but unpaid interest and the remainder of such payments shall be applied to reduce the outstanding principal balance of the Note.  The Obligations may be repaid at any time and from time to time. The account to be transferred into is a Chase account with the following information:

ACCT #: 809379196
ROUTING #: 322271627

     3.    MANNER OF PAYMENT. Payment shall be made in cash by wire transfer of immediately available funds to an account designated in writing by the Lender to the Borrower and/or by check. If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of Maryland), such required payment shall be due and payable on the immediately succeeding business day.

     4.    DEFAULT. If any of the following occur, a default ("Default") under this Note shall exist:

          (a)    The failure of timely payment or performance of the Obligations under this Note.

(b)    Borrower shall make an assignment for the benefit of its creditors or admit in writing its inability to pay its debts generally as they become due.

(c)    Borrower shall be adjudicated a bankrupt, or a custodian, trustee or receiver shall be appointed for its or of all or a substantial part of its property, and such adjudication or appointment shall not be discharged, vacated or stayed on appeal within sixty (60) days; or any court shall take jurisdiction of all or a substantial part of the property of Borrower in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Borrower, and such proceeding shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within sixty (60) days; or Borrower shall file a petition, or an answer consenting to or acquiescing in a petition against it in bankruptcy or under the Federal Bankruptcy Code or any similar law, state or federal, whether now or hereafter existing or any such petition filed against Borrower shall be approved or not vacated or stayed within thirty (30) days.

5.    REMEDIES UPON DEFAULT. If a Default occurs, upon notice from the Lender, this Note and all Obligations hereunder may be declared immediately due and payable, and Lender may exercise any rights and remedies as provided under this Note, or as provided by law or equity.

6.    ATTORNEY'S FEES AND OTHER COLLECTION COSTS. Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

7.    AMENDMENT. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.

8.    WAIVERS. The Borrower hereby waives to the extent not prohibited by applicable law (i) all presentments, demands for performance or notices of nonperformance; (ii) any requirement of diligence or promptness on the part of the Lender to enforce its rights under this Note; (iii) any and all notices of every kind and description which may be required to be given by any law; and (iv) any defense of any kind (other than payment) which it may now or hereafter have with respect to its obligations under this Note.  No failure, delay or course of dealing on the part of the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the simultaneous or later exercise of any other right, power or privilege hereunder.

9.    RIGHTS AND REMEDIES. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender may otherwise have.

10.    GOVERNING LAW/VENUE. This Note shall be governed by and construed in accordance with the laws of the District of Columbia without regard to the principles or policies of conflicts of laws of such state.  The Borrower and Lender hereby agree that all actions with

-2-

respect to this Note shall be brought exclusively in the state and federal courts having jurisdiction over the city and county of  Washington DC

11.    WAIVER OF JURY.  THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

12.    SEVERABILITY.  The parties hereto intend that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender or the holder hereof under the remainder of this Note shall continue in full force and effect.

13.    NOTICES. Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to Borrower's address shown above or such other address as provided hereunder, and to Lender, if in writing and mailed or delivered to the address set forth above or such other address as Lender may specify in writing from time to time. In the event that Borrower changes Borrower's address at any time prior to the date the obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by nationally recognized overnight courier or by registered or certified mail, return receipt requested, all charges prepaid.

14.    CAPTIONS. The captions contained in the Note are inserted for convenience only and shall not affect the meaning or interpretation of the Note.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has caused this Note to be executed on the date first above written.

WonderLuxxe

By:

Name:

Title:    Marti Hines
          CEO

Lender

By: _____

Name:

Title:    August Leo Investment
          Owner.

## PROMISSORY NOTE

$7,800                                                                            September 22, 2019

     FOR VALUE RECEIVED, WanderLuxxe LLC, a California limited liability company, with an address at 1209 S Crescent Heights Los Angeles, CA 90035 att: Marti Hines  (the "Borrower") hereby promises to pay to the order of _Hitz Investment Group Trust_(the "Lender"), at the Lender's address at 3108 M Place SE Washington, DC 20019, (or such other place as the Lender may designate in writing to the Borrower), the aggregate principal sum of Six Thousand Five Hundred Dollars ($6,500) (the "Loan Amount") with interest, in lawful money of the United States, upon the terms and subject to the conditions set forth herein.

     1.    INTEREST RATE. Interest on the unpaid Loan Amount and the Loan Fee under this Promissory Note (the "Note") shall accrue at a rate of forty (20%) percent per annum commencing on January 15, 2020. Interest shall be calculated on the basis of actual number of days elapsed over a year of 360 days and all accrued and unpaid interest shall be compounded annually and added to the outstanding principal balance hereof.

     2.    PAYMENTS. The Borrower shall make payment in full of the Loan Amount and the Loan Fee, Seven Thousand Eight Hundred ($7,800.00) Dollars, on or before January 15, 2020. If Borrower fails to do so, Borrower shall make monthly payments of at least the interest until such time as the full amount as all principal, fees and interest due hereunder (the "Obligations") have been paid in full. All payments made under this Note shall be applied first to payment of accrued but unpaid interest and the remainder of such payments shall be applied to reduce the outstanding principal balance of the Note. The Obligations may be repaid at any time and from time to time. The account to be transferred into is a Chase account with the following information:

ACCT #: 809379196
ROUTING #: 322271627

     3.    MANNER OF PAYMENT. Payment shall be made in cash by wire transfer of immediately available funds to an account designated in writing by the Lender to the Borrower and/or by check. If the due date of any required payment under this Note is not a "business day" (for this purpose, any day other than a Saturday, Sunday or legal holiday observed in the State of Maryland), such required payment shall be due and payable on the immediately succeeding business day.

     4.    DEFAULT. If any of the following occur, a default ("Default") under this Note shall exist:

          (a)    The failure of timely payment or performance of the Obligations under this Note.

(b)     Borrower shall make an assignment for the benefit of its creditors or admit in writing its inability to pay its debts generally as they become due.

(c)     Borrower shall be adjudicated a bankrupt, or a custodian, trustee or receiver shall be appointed for its or of all or a substantial part of its property, and such adjudication or appointment shall not be discharged, vacated or stayed on appeal within sixty (60) days; or any court shall take jurisdiction of all or a substantial part of the property of Borrower in any involuntary proceeding for the reorganization, dissolution, liquidation or winding up of Borrower, and such proceeding shall not be discharged or such jurisdiction relinquished or vacated or stayed on appeal within sixty (60) days; or Borrower shall file a petition, or an answer consenting to or acquiescing in a petition against it in bankruptcy or under the Federal Bankruptcy Code or any similar law, state or federal, whether now or hereafter existing or any such petition filed against Borrower shall be approved or not vacated or stayed within thirty (30) days.

5.     REMEDIES UPON DEFAULT. If a Default occurs, upon notice from the Lender, this Note and all Obligations hereunder may be declared immediately due and payable, and Lender may exercise any rights and remedies as provided under this Note, or as provided by law or equity.

6.     ATTORNEY'S FEES AND OTHER COLLECTION COSTS. Borrower shall pay all of Lender's reasonable expenses incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

7.     AMENDMENT. This Note may not be changed or terminated orally, but only by an agreement in writing signed by the party against whom enforcement of any change, modification, termination, waiver, or discharge is sought.

8.     WAIVERS. The Borrower hereby waives to the extent not prohibited by applicable law (i) all presentments, demands for performance or notices of nonperformance; (ii) any requirement of diligence or promptness on the part of the Lender to enforce its rights under this Note; (iii) any and all notices of every kind and description which may be required to be given by any law; and (iv) any defense of any kind (other than payment) which it may now or hereafter have with respect to its obligations under this Note. No failure, delay or course of dealing on the part of the Lender in exercising any right, power or privilege under this Note shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude the simultaneous or later exercise of any other right, power or privilege hereunder.

9.     RIGHTS AND REMEDIES. The rights and remedies herein expressly provided are cumulative and not exclusive of any rights or remedies which the Lender may otherwise have.

10.     GOVERNING LAW/VENUE. This Note shall be governed by and construed in accordance with the laws of the District of Columbia without regard to the principles or policies of conflicts of laws of such state. The Borrower and Lender hereby agree that all actions with

-2-

20121956v.1

respect to this Note shall be brought exclusively in the state and federal courts having jurisdiction over the city and county of Washington DC

11.    WAIVER OF JURY.  THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS OR THE TRANSACTIONS CONTEMPLATED HEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

12.    SEVERABILITY.  The parties hereto intend that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender or the holder hereof under the remainder of this Note shall continue in full force and effect.

13.    NOTICES. Any notices to Borrower shall be sufficiently given, if in writing and mailed or delivered to Borrower's address shown above or such other address as provided hereunder, and to Lender, if in writing and mailed or delivered to the address set forth above or such other address as Lender may specify in writing from time to time. In the event that Borrower changes Borrower's address at any time prior to the date the obligations are paid in full, Borrower agrees to promptly give written notice of said change of address by nationally recognized overnight courier or by registered or certified mail, return receipt requested, all charges prepaid.

14.    CAPTIONS. The captions contained in the Note are inserted for convenience only and shall not affect the meaning or interpretation of the Note.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has caused this Note to be executed on the date first above written.

Wander Luxxe.                                          Lender

By:                                                    By:
Name:    Marti Hines                                   Name:
Title:    CEO                                          Title: Hitz Investment Group
                                                       Trust.

                                                       Owner

20121956v.1